# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

### IN ADMIRALTY

IN THE MATTER OF THE:

Complaint and Petition of INTREPID
MARINE TOWING & SALVAGE,
INC. d/b/a SEA TOW
CLEARWATER/PORT RICHEY, and
its stockholder/s, including JAMES
PATRICK LAMB, as owner and/or
owners *pro hac vice* of a 1998 World Cat
266SS, Vessel Identification Number
(VIN) EPY662178898, FL Registration
Number FL3588KF, including her
engines, gear, tackle, appurtenances,
equipment, furniture, etc., for
Exoneration from and/or Limitation of
Liability,

      Petitioners.

Case No: 8:21-cv-420-CEH-SPF

_____/

### O R D E R

This cause comes before the Court upon Magistrate Judge Sean P. Flynn's

Report and Recommendation (the "R&R") (Doc. 32) and Petitioners' Motion to Strike

Claimants' Supplemental Filing in Support of Magistrate's Report and

Recommendation (Doc. 35). All parties received a copy of the R&R and an

opportunity to object. Petitioners object (Doc. 33), to which Claimants respond (Doc.

34).

The issue before the Court in this admiralty action is whether Claimants provided written notice of a claim to Petitioners under 46 U.S.C. § 30511(a). Contending that they did, Claimants moved to dismiss this action as untimely or, alternatively, to lift the stay and injunction and to allow them to proceed with their claims in state court. Construing the motion as one for summary judgment and concluding that Claimants had provided Petitioners with written notice, the Magistrate Judge recommended that the Court grant-in-part and deny-in-part that motion. The Court agrees. Upon consideration of the R&R, Petitioners' objections, Claimants' response, and the Court's independent examination of the file, the Court will overrule the objections and adopt the R&R for the reasons set forth below. The Court will also deny the Motion to Strike.

## I.    BACKGROUND

### A. Factual Background

On February 22, 2021, Intrepid Marine Towing & Salvage, Inc. d/b/a Sea Tow Clearwater/Port Richey, and its stockholder/s, including James Patrick Lamb ("Petitioners"), as owners and/or owners *pro hac vice* of a 1998 World Cat 266SS, Vessel Identification Number (VIN) EPY662178898, FL Registration Number FL3588KF, including her engines, gear, tackle, appurtenances, equipment, furniture, etc. (the "Vessel") filed their Complaint and Petition for Exoneration from or Limitation of Liability (Doc. 1).

The Amended Complaint and Petition for Exoneration from or Limitation of Liability followed three days later, which, like the original Complaint and Petition,

includes these claims: (1) a claim under the Shipowner's Limitation of Liability Act, 46 U.S.C. § 30505 *et seq.*, and Supplemental Rule F(2) for exoneration from any and all liability as to the damages, injuries, or losses sustained by any and all potential claimants in the described incident; and (2) an alternative claim under the Shipowner's Limitation of Liability Act to limit liability, if any, to the amount or value of Petitioners' interest in the Vessel following the described incident. Doc. 8 ¶¶16–24.

On June 14, 2020, Captain Curtis Snyder operated the Vessel in the course and scope of his employment with Petitioners. *Id.* at ¶11; Doc. 16 ¶11. While he operated the Vessel, it collided with another vessel, a 2002 Hurricane 232 GS Deck, which Claimants Nicholas Cachussie, Adrienne Cachussie, and Cheryl Watkins (collectively, "Claimants") occupied.[1] Doc. 8 ¶12; Doc. 16 ¶12.

Three days later, on June 17, 2020, Claimants' counsel sent a letter to Petitioners (the "Letter"). Doc. 26-1 at 1; *see* Doc. 31 at 5. The Letter explained that counsel represented Claimants "for losses sustained" in a watercraft collision that occurred on June 14, 2020. Doc. 26-1 at 1. The Letter stated, "On June 14, 2020 around 3:20 PM, Curtis Snyder, a captain of a Sea Tow of Clearwater / Port Richey vessel violently collided with the watercraft that our clients, Nick Cachussie, Adrienne Cachussie and Cheryl Watkins occupied causing significant injury." *Id.* The Letter also

---

[1] The parties dispute the severity of the collision and the severity of Claimants' injuries. *See* Doc. 16-3 ¶¶13, 15; Doc. 31 at 5. But, as the Magistrate Judge highlights, this factual dispute is immaterial because the analysis examines the sufficiency of Claimants' notice to Petitioners. Doc. 32 at 3 n.2. In any event, the Court addresses Lamb's sworn statement below.

requested "insurance coverage," including "the full names of all insurance companies who provided liability coverage to you or your vessel and the amount of such coverage," so that counsel could "properly advise [his] client[s] of certain legal rights." *Id.* The Letter advised: "We are requesting that you do not discard or make any alteration whatsoever to any evidence which is related to this claim" without notification. *Id.* at 2. Finally, the Letter requested the production of various documents related to the collision and advised that Claimants' counsel would "pursue all available legal remedies" if any evidence was "spoliated despite this request." *Id.*

On June 26, 2020, Claimants' counsel sent a letter to Berkley Offshore Underwriting Managers—Intrepid's insurer—that confirmed his representation of Claimants. Doc. 26-2 at 1; Doc. 31 at 6. The letter also enclosed photographs of the vessel which Claimants occupied at the time of the collision. Doc. 26-2 at 1.

### B. Procedural History

After Petitioners initiated this action and filed their Amended Complaint and Petition for Exoneration from or Limitation of Liability, the Court entered an Amended Order Approving Ad Interim Stipulation of Value, and Directing Issuance of Amended Limitation Injunction and Monition (Doc. 14). The Amended Order provided that the Ad Interim Stipulation for the value of Petitioners' interest in the Vessel, for no more than the amount of $42,500, be accepted as the Ad Interim Stipulation for the purpose of this action. Doc. 14 at 3. The Amended Order also ordered an injunction against all persons claiming damage for any and all loss or injuries as a result of the alleged incident. *Id.*

4

On May 17, 2021, Claimants answered and asserted affirmative defenses (Doc. 16). Their first affirmative defense asserts that Petitioners filed their Complaint and Petition for Exoneration or Limitation of Liability outside of the six-month timeframe in 46 U.S.C. § 30511(a), on the basis that Petitioners did not file their Complaint and Petition until February 22, 2021, even though Claimants' counsel provided express written notice to Petitioners on June 17, 2020, and June 26, 2020. Doc. 16 at 4–5. As part of their answer, Claimants also filed under Supplemental Rule F(5) a notice of claim, which states claims for negligence within privity or knowledge against Petitioners.[2] Doc. 16-3 ¶¶16–45. Petitioners have answered those claims (Doc. 19).

Claimants then filed their Motion to Dismiss, Stay and/or Lift the Injunction in this Matter and Proceed in State Court (the "Motion to Dismiss"), in which they argue, in relevant part, that the Court should dismiss the action because Petitioners did not initiate it within six months in accordance with 46 U.S.C. § 30511(a). Doc. 26 at 5–6. The Court referred the Motion to Dismiss to the Magistrate Judge. Doc. 28 at 1. The Magistrate Judge construed the Motion to Dismiss as a motion for summary judgment and provided the parties with 21 days to provide pertinent materials. Doc. 29 at 2. The parties provided evidence (Docs. 30, 31), and the Magistrate Judge subsequently entered the R&R (Doc. 32).

---

[2] Each of the claims prays that the claimant "be allowed to make due proof of his [or her] claims as against the Petitioners for all losses and damages plus pre-judgment interest and costs, that Petitioner's [sic] right to Exoneration from or Limitation of Liability be denied, that Petitioner[s] be required to increase the 'agreed value' of the subject vessel and for such other and further relief deemed just and proper under the circumstances." Doc. 16-3 at 5,7, 9–11, 14.

Petitioners objected to the R&R within the 14-day period under 28 U.S.C. § 636(b)(1) (Doc. 33). Three days later, Claimants filed their "Supplemental Filing in Support of the Magistrate's Report and Recommendation" (Doc. 34). Petitioners move to strike that filing (Doc. 35).

## II.    LEGAL STANDARD

A district judge may designate a magistrate judge to submit findings of fact and recommendations for the district judge's disposition of a motion to dismiss or a motion for summary judgment. 28 U.S.C. § 636(b)(1)(A)–(B). A district judge may accept, reject, or modify the magistrate judge's findings or recommendations. *Id.* § 636(b)(1)(C). The parties may object to those proposed findings and recommendations within 14 days. *Id.* Where a party objects to the magistrate judge's proposed findings and recommendations, the district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* The district court reviews legal conclusions de novo, even in the absence of an objection. *See Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994); *Ashworth v. Glades Cnty. Sch. Bd. of Cnty. Comm'rs*, 379 F. Supp. 3d 1244, 1246 (M.D. Fla. 2019).

Rule 12(f), Fed. R. Civ. P., generally governs motions to strike. *Garin v. Menegazzo*, No. 21-cv-23582-BLOOM/Otazo-Reyes, 2022 WL 1658831, at *4 (S.D. Fla. May 25, 2022). Under that rule, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

## III.    ANALYSIS

The Court will address the Motion to Strike before turning to the R&R. As explained below, the Court will deny the Motion to Strike, overrule Petitioners' objections, and adopt the R&R.

### A. The Court Will Deny the Motion to Strike

In the "Supplemental Filing in Support of Magistrate's Report and Recommendation," Claimants "move" the Court to "enter an [o]rder reflecting the findings and determinations" in the R&R. Doc. 34 at 5. Without providing any accompanying citations to the record, they recite certain "facts." *Id.* at 2–4. They cite only to cases to which the Magistrate Judge cited—cases absent from the Motion to Dismiss. *Id.* at 3–4. They contend that Petitioners do not provide "any new arguments or additional information in their response to the Magistrate's Report and Recommendation." *Id.* at 2.

Petitioners move to strike the Supplemental Filing, arguing that it is an "unauthorized" filing because it contains "late additional arguments and recitation[s] of alleged facts" in support of the Motion to Dismiss. Doc. 35 at 2–3. Claimants failed to respond to the Motion to Strike. *See* Local R. M.D. Fla. 3.01(c).

Although Claimants contradictorily refer to their paper as a "[m]otion" and state that they "move" for Court relief while also titling the paper as a "Supplemental Filing," the Court construes the paper as a response to Petitioners' objections. Indeed, Claimants argue that Petitioners fail to provide new arguments in response to the R&R, cite the cases mentioned in the R&R with approval, and ask the Court to adopt

the R&R. The Court allows parties to file responses to objections to reports and recommendations. *See Lee Mem'l Health Sys. v. Blue Cross & Blue Shield of Fla., Inc.*, 248 F. Supp. 3d 1304, 1307 n.2 (M.D. Fla. 2017) (stating the due date for the plaintiff's response to the defendants' objections to the report and recommendation and striking the response as untimely); *In re Petition of Mad Toyz III, LLC*, No. 8:20-cv-911-MSS-AAS, 2021 WL 2916883, at *1 (M.D. Fla. Jan. 27, 2021) (stating that the petitioners had responded to the respondents' objections to a report and recommendation). As such, the Court will not strike the Supplemental Filing.[3] The Court will deny the Motion to Strike.[4]

### B. The Court Will Overrule Petitioners' Objections and Adopt the R&R

In the Motion to Dismiss, Claimants move the Court to dismiss the action or, alternatively, to lift the stay and injunction and to allow them to proceed with their claims in state court. Doc. 26 at 56. Concluding that Claimants provided Petitioners with notice that there was a "reasonable possibility" of a claim that exceeded the Vessel's value, the Magistrate Judge recommended that the Court grant the Claimants' construed request for summary judgment. Doc. 32 at 7–11. The Magistrate Judge also recommended that the Court deny Claimants' alternative request to lift the stay and

---

[3] Additionally, Rule 12(f) provides no basis for relief, as the Supplemental Filing is not a pleading. *See* Fed. R. Civ. P. 7(a) (listing types of pleadings).

[4] Although the Court will deny the Motion to Strike, the Supplemental Filing does not provide any assistance to the Court in reviewing the R&R, Petitioners' objections, or the record. Over the course of three and one-half pages, Claimants simply argue that Petitioners' objections do not raise any new arguments, recite case law cited by the Magistrate Judge, and state certain "facts" without accompanying citations to the record.

injunction because the limitation fund does not exceed the aggregate amount of all possible claims against Petitioners. *Id.* at 12. Petitioners offer two objections: (1) the Magistrate Judge erred in concluding that the Letter constitutes written notice under 46 U.S.C. § 30511(a); and (2) the Magistrate Judge erred in not considering Lamb's "Statement Under Penalty of Perjury." Doc. 33 at 3–13.

The Shipowner's Limitation of Liability Act creates a procedure under which a shipowner can limits its liability for certain claims that involve one of its vessels to the vessel's value, plus its then-pending freight. *Orion Marine Constr., Inc. v. Carroll*, 918 F.3d 1323, 1325 (11th Cir. 2019). Section 30511(a) of the Act, entitled "Exoneration and Limitation of Liability," states that "[t]he owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under this chapter." 46 U.S.C. § 30511(a). The vessel's owner must bring the action "within 6 months after a claimant gives the owner written notice of a claim." *Id.* § 30511(a). Entitled "Limitation of Liability," Supplemental Rule F "repeat[s]" § 30511(a)'s six-month deadline: "Not later than six months after receipt of a claim in writing, any vessel owner may file a complaint in the appropriate district court . . . for limitation of liability pursuant to statute." Supp. R. F(1); *Orion Marine Constr.*, 918 F.3d at 1329. After establishing this six-month timeframe for filing a complaint, Rule F provides that such a complaint "may demand exoneration from as well as limitation of liability." Supp. R. F(2).

In *Orion Marine Construction, Inc. v. Carroll*, the Eleventh Circuit adopted the "*Doxsee/McCarthy*" test as the controlling standard for determining the sufficiency of

notice under § 30511(a). 918 F.3d at 1331. Under that test, to trigger the six-month filing period of § 30511(a), a claimant must provide the shipowner or its agent with a written notice that reveals a "reasonable possibility" that the underlying claim exceeds the value of the vessel. *Id.* at 1338. Although a claimant's notice need not "include a specific demand for damages, and while it's true that the vessel owner bears the burden of 'uncertainty' and 'doubt' as to the amount of alleged damages, it remains the case that the claimant's notice must reveal a reasonable possibility that the claims may exceed the offending vessel's value." *Id.* at 1337. "While this standard is not toothless, it is also not particularly stringent." *In re Eckstein Marine Serv. L.L.C.*, 672 F.3d 310, 317 (5th Cir. 2012), *overruled on other grounds by In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787 (5th Cir. 2021).

The Magistrate Judge concluded that the Letter provided Petitioners with notice of a "reasonable possibility" of a claim that exceeded the Vessel's value.[5] Doc. 32 at 7. For support, the Magistrate Judge looked to *Paradise Divers, Inc. v. Upmal*, 402 F.3d 1087 (11th Cir. 2005). Doc. 32 at 7. There, the Eleventh Circuit applied both the *Doxsee/McCarthy* test and the now-defunct *Moreira* test. 402 F.3d at 1091. The court held that the claimant's two letters together provided sufficient notice under the *Doxsee/McCarthy* test where one of the letters: (1) asserted a claim; (2) stated an intent to file a complaint; (3) advised that the claimant "had incurred tens of thousands of

---

[5] Because he concluded that the Letter constituted written notice, the Magistrate Judge did not address Petitioners' argument that the June 26, 2020 letter—dated 9 days after the Letter—did not constitute written notice. Doc. 32 at 6 n.4. Because the Court reaches the same conclusion, it need not address that argument, either.

dollars in medical expenses; and (4) "requested information about insurance, including excess coverage," while another letter "also sought information about additional insurance coverage." *Id.* After recognizing this holding, the Magistrate Judge explained that courts within the Eleventh Circuit have generally found letters to qualify as written notice of a claim where several—not necessarily all—of these factors, or similar factors, are present. *Id.*

Drawing on those factors, the Magistrate Judge explained that the Letter provided sufficient notice because it: (1) made clear that Claimants sought information related to a potential claim against Petitioners for "losses" sustained by Claimants as a result of the Vessel "violently collid[ing]" with the watercraft which Claimants occupied; (2) placed blame on Petitioners for the collision; (3) requested information about Petitioners' insurance coverage, thereby placing Petitioners on notice that the claim could exceed the Vessel's value; and (4) requested production of certain documents and requested, "in very serious terms," the preservation of evidence. *Id.* at 7–11. The Magistrate Judge cited to several cases from throughout the Eleventh Circuit in support. *Id.*

A *de novo* review reveals that the Magistrate Judge correctly concluded that the Letter constituted written notice. The parties do not dispute the contents of the notice or that Petitioners received the notice.[6] Thus, the only question is whether the Letter

---

[6] In his sworn statement, Lamb indicates that "we" received the Letter "sometime after June 17, 2020." Doc. 31 at 5. But Petitioners do not provide an exact date or otherwise argue that the date of their receipt of the Letter affects the timeliness analysis.

constituted written notice. For the Letter to constitute written notice, it simply needed to reveal a "reasonable possibility" of a claim exceeding $42,500. That's it. The law does not require the Letter to reveal a "reasonable probability" or a "reasonable likelihood" of a claim exceeding $42,500.

The Court agrees with the Magistrate Judge's well-reasoned analysis and survey of cases applying the *Doxsee-McCarthy* test. An examination of the Letter and consideration of those factors indicates that the Letter revealed a "reasonable possibility" of a claim that exceeded the "modest" $42,500 value of the Vessel. *See Paradise Divers*, 402 F.3d at 1091 (describing the $50,000 value of a vessel as "modest"). First, the Letter indicated that Claimants sought information about a potential claim against Petitioners for "losses" they sustained as a result of a violent collision. It explained that counsel represented all three Claimants, not just one, for "losses" sustained from the Vessel violently colliding with their watercraft. The Letter referred to all three Claimants when explaining that the violent collision caused "significant injury." The Letter also referred to a "claim" in requesting information, advising Petitioners not to discard or alter any evidence related to "this claim" without notifying Claimants' counsel. The Letter's indication that Claimants sought information pertaining to a potential claim against Petitioners for losses that Claimants sustained as a result of the Vessel colliding with the watercraft that they occupied supports a finding that the Letter revealed a "reasonable possibility" of a claim that exceeded the Vessel's value. *See Paradise Divers*, 402 F.3d at 1091; *Mad Toyz III*, 2021 WL 2916883, at *2.

12

Second, the Letter also placed blame on Petitioners.[7] Claimants' attorney addressed the Letter to "Sea Tow Clearwater / Port Richey," which is Intrepid's DBA name. The Letter also stated that "a captain of a Sea Tow of Clearwater / Port Richey violently collided with the watercraft that [the Claimants] occupied causing significant injury." Petitioners now argue that the Letter alludes to only "a singular 'significant injury,' without providing any indication of who suffered the injury, or the nature of the injury." Doc. 33 at 3. But reading the letter as indicating that only one Claimant suffered a significant injury ignores the Letter's context. Again, the Letter advised that counsel was retained to represent all three Claimants for "losses" sustained in a "violent collision" with the watercraft that all three of them occupied, which caused significant injury. Thus, the Letter did not refer to "*a* significant injury" and separately indicated that counsel was retained to represent all three Claimants for losses sustained in the violent collision. Further, the Letter need not include a specific demand for damages. Petitioners do not point to any binding authority standing for the proposition that the Letter must detail the nature of the injury in order to reveal the requisite "reasonable possibility." The Letter's placement of blame on Petitioners for the violent collision supports a finding that the Letter revealed a "reasonable possibility" of a claim that exceeded the Vessel's value. *See Mad Toyz III*, 2021 WL 2916883, at *2; *In*

---

[7] Unlike the *Doxsee/McCarthy* test, the *Moreira* test required a claimant's notice to blame the vessel owner for any damage or loss. *Orion Marine Constr.*, 918 F.3d at 1330–31. Here, the Magistrate Judge identified the Letter's placement of blame on Petitioners for the violent collision as a factor in the written-notice analysis, not a requirement.

13

*re Bertsch*, 540 F. Supp. 3d 1188, 1192 (S.D. Fla. 2021); *In re Martinez*, No. 8:11-cv-802-SDM-MAP, 2011 WL 2516691, at *1 (M.D. Fla. June 23, 2011).

Third, the Letter requested information about Petitioners' insurance coverage, which placed them on notice that a claim could exceed the Vessel's $42,500 value. The Letter requested information about insurance coverage so that Claimants' counsel could advise his clients of legal rights and instructed Petitioners to forward the Letter to each insurance company providing coverage. The Letter asked for the names of all insurance companies "provid[ing] liability coverage to you or your vessel and the amount of such coverage." The Court construes this request for the amount of insurance coverage as requesting the limits of coverage. Requesting the limits of insurance coverage is "hardly different from asking specifically about 'excess insurance.'" *Martinez*, 2011 WL 2516691, at *2. The request for insurance coverage information also supports a finding that the Letter revealed a "reasonable possibility" of a claim that exceeded the $42,500 value of the Vessel. *See Paradise Divers*, 402 F.3d at 1091; *Martinez*, 2011 WL 2516691, at *2; *Mad Toyz III*, 2022 WL 2916883, at *3; *Falk v. Gonzalez-Kakouris*, No. 19-10197-CIV-MARTINEZ/OTAZO-REYES, 2021 WL 7366669, at *3 (S.D. Fla. Aug. 10, 2021).

Fourth, the Letter requested the production of certain documents and items and "requested in very serious terms" the preservation of evidence. *See Bertsch*, 540 F. Supp. 3d at 1192 (finding that a letter constituted notice because, among other reasons, "in very serious terms, the letter requested preservation of evidence and warned that counsel would do 'whatever is necessary to protect our client's interest'"). For

14

example, the Letter asked Petitioners to preserve and produce the Vessel so that Claimants' expert could conduct an inspection, any information pertaining to "all Sea Tow related collisions within the past year," and the results of any drug and alcohol screening of Snyder on the date of the collision. The Letter advised that spoliation of evidence would result in Claimants pursuing all available remedies. The requests for production of documents and items and for preservation of evidence supports a finding that the Letter revealed a "reasonable possibility" of a claim that exceeded $42,500 value of the Vessel. *See id*; *Falk*, 2021 WL 7366669, at *3; *see also Delta Towing*, 2015 WL 6459901, at *2; *Mad Toyz III*, 2021 WL 2916883, at *2.

Taken together, these factors show that the Letter revealed a "reasonable possibility" of a claim that exceeded the modest $42,500 value of the Vessel. The bulk of Petitioners' objections consists of their effort to distinguish cases upon which the Magistrate Judge relied in setting forth and examining the factors. The problem with this approach, however, is that it largely ignores the Magistrate Judge's factor-driven analysis and does not focus on the proposition for which the Magistrate Judge cites each case. In addition to this deficiency, Petitioners' identified distinctions are otherwise unpersuasive.

For example, the Magistrate Judge relied upon *Paradise Divers* to explain that courts generally have found letters to qualify as written notice where those letters contain some of the factors in, or similar factors to, those in *Paradise Divers*. Then, in the factor analysis, he: (i) likened the Letter to a letter in *Paradise Divers* in explaining that it made clear that Claimants sought information related to a potential claim

15

against Petitioners for losses sustained as a result of the Vessel violently colliding with the watercraft occupied by Claimants; (ii) invoked similar language from *Paradise Divers* to reason that concluding that "significant" injuries incurred by three individuals due to a "violent" collision could not exceed the "modest" value of the Vessel would be unreasonable; and (iii) pointed out that the Letter, like those in *Paradise Divers*, also requested information about Petitioners' insurance coverage. Doc. 32 at 7–9.

Yet, after a lengthy case description and block quotation, Petitioners argue only that *Paradise Divers* is distinguishable because, unlike that case, the Letter did not include a claim or demand, impute fault on Petitioners, explain that the Claimants have incurred any medical expenses, or "otherwise give notice that Claimants' claim, if any, could exceed $42,500." Doc. 33 at 5. They do not dispute the Magistrate Judge's identification of factors, the language about the "modest" value of the vessel in *Paradise Divers*, or the requests for insurance coverage. Although they contend that the Letter lacked a claim or demand, they fail to directly address the Magistrate Judge's conclusion that the Letter made clear that the Claimants sought information about a potential claim against Petitioners for losses sustained from the Vessel violently colliding with the watercraft which Claimants occupied, which the Magistrate Judge compared to a letter in *Paradise Divers* that stated an intent to file a complaint and asserted a claim for Jones Act negligence, unseaworthiness, and maintenance and cure. To be sure, the Letter's language about asserting a claim was not as strong or clear as the language in *Paradise Divers*. But the Magistrate Judge recognized this and

16

concluded that the Letter constituted written notice in light of the presence of the other factors. Doc. 32 at 8 n.5.

By way of another example, the Magistrate Judge cited to *In re Martinez*, 2011 WL 2516691, in the factor-driven analysis to explain that: (i) the Letter placed blame on Petitioners for the violent collision, similar to the Court's recognition in *Martinez* that the subject letters asserted the plaintiffs' liability; and (ii) like *Martinez*, the Letter requested information about Petitioners' insurance coverage. Doc. 32 at 8–9. In objecting, Petitioners argue that *Martinez* differs from this action because the letters there "stated that the claimant suffered severe and permanent injuries, [stated] that her medical condition remained unstable for months," "blamed the petitioner and demanded its policy limits, and informed the petitioner about the claimant's intent to seek punitive damages," whereas "[n]one of those elements are present" in the Letter. Doc. 33 at 7. This short analysis ignores the Magistrate Judge's purpose in relying upon this case and inaccurately characterizes the Letter. As explained above, the Letter placed blame on Petitioners and demanded coverage limits.[8]

Next, contending that the Magistrate Judge "appears to not have taken into account relevant, unrefuted evidence," Petitioners argue that the Magistrate Judge should have concluded that in light of Intrepid's knowledge at the time, as reflected in

---

[8] Petitioners' other efforts to distinguish cases are also unavailing. For example, in seeking to distinguish one case, they argue that the Letter must satisfy the elements of the defunct *Moreira* test. Doc. 33 at 6. Similarly, in seeking to distinguish another case, they point out a simple aesthetic difference in that the respondents there argued that petitioners prematurely filed the action. *Id.* But that distinction makes no difference, as the court in that case applied the *Doxsee-McCarthy* test. *Bertsch*, 540 F. Supp. at 1191–92.

Lamb's sworn statement, there was no reason for Intrepid to believe a reasonable possibility existed that Claimants' claim would exceed $42,500. Doc. 33 at 10–12. Petitioners cite to portions of Lamb's sworn statement discussing his observations, statements of other people to Lamb about their observations, and Lamb's contention that Intrepid was not aware of the reasonable possibility that Claimants' claims could exceed the Vessel's value until after it received notice of Claimants' November 18, 2020 demands. *Id.* at 10–11. Petitioners submitted only the sworn statement, which included the Letter as an exhibit, in response to the Magistrate Judge's invitation to provide evidence for consideration. The Magistrate Judge recognized in the R&R that Petitioners provided additional evidence. *Id.* at 1, 3–4. The Magistrate Judge even cited to most of the paragraphs upon which Petitioners now rely in explaining that the factual dispute about the severity of the collision and the severity of Claimants' injuries is immaterial to resolving the Motion to Dismiss because the "outcome of the Motion [to Dismiss] depends on the sufficiency of Claimants' notice to Petitioners." *Id.* at 3 n.2. This immaterially comment appears to be the basis for this objection. But deeming certain portions of the sworn statement "immaterial" does not mean that the Magistrate Judge did not consider them. Instead, he considered them and found them immaterial.

Regardless, the cited portions of Lamb's sworn statement do not upend the Magistrate Judge's conclusion. As a sworn statement offered in support of a construed motion for summary judgment, Lamb's statement needs to "be made on personal knowledge" and "set out facts that would be admissible in evidence." Fed. R. Civ. P.

56(c)(4). Petitioners point to Lamb's statement that Snyder told him after the collision that at the time of the accident, three passengers occupied the *Hurricane* and that all of them jumped off before the collision without suffering any injury. Doc. 31 at 5. But this statement is hearsay, and Petitioners do not point to an applicable exception. *See* Fed. R. Evid. 801(c), 802. Similarly, Petitioners point to Lamb's statement that an office manager later reported to him that she could observe that none of the *Hurricane* passengers appeared to have suffered any injuries. *Id.* This statement is also hearsay, and Petitioners do not point to an applicable exception. *See* Fed. R. Evid. 801(c), 802.

Petitioners highlight Lamb's statement that after the incident, he observed Claimants walking around and speaking with several individuals and that "it did not appear to [him] that they had suffered any injuries." *Id.* But he concedes that he "was busy working on the other tows and did not have the opportunity to speak with the *Hurricane* passengers." *Id.* Even if the Court considers Lamb's observation that Claimants "did not appear" to have suffered any injuries, that observation does not render the Letter insufficient written notice in light of the "reasonable possibility" analysis above.

Finally, Petitioners point to Lamb's statement that Intrepid was not aware of the reasonable possibility that Claimants' claims could exceed the Vessel's value until after receiving notice of Claimants' November 18, 2020 demands. Doc. 31 at 7. This assertion is based upon the statements above and Lamb's observation that neither of Claimants' June 2020 letters detailed the extent of Claimants' injuries, described the injuries, contained a demand for a dollar amount, or explained that the claims for

19

bodily injuries could exceed the Vessel value. Doc. 31 at 6. But the law does not require the letters to include that information; the letters need only reveal a "reasonable possibility" of a claim that exceeded the Vessel's value. Nor does this statement change the conclusion above that the Letter constituted "written notice" under the Act. As such, these arguments lack merit.

Based on the foregoing analysis, the Court will overrule Petitioners' objections. Petitioners did not timely file this action for exoneration or limitation of liability. Further, no party objects to the Magistrate Judge's analysis or recommendation for Claimants' alternative request. After a *de novo* review of the Report and Recommendation as to the Claimants' alternative request, the Court will adopt that recommendation, too.

## IV.   CONCLUSION

Accordingly, it is **ORDERED**:

1. Petitioners' Motion to Strike Claimants' Supplemental Filing in Support of Magistrate's Report and Recommendations (Doc. 35) is **DENIED**.

2. Petitioners' Objections to Magistrate Judge's Report and Recommendation (Doc. 33) are **OVERRULED**.

3. The Report and Recommendation of Magistrate Judge Sean P. Flynn (Doc. 32) is **ADOPTED**, **CONFIRMED**, and **APPROVED** in all respects and is made a part of this order for all purposes, including appellate review.

4. Claimants' Motion to Dismiss, Stay and/or Lift the Injunction in this Matter and Proceed in State Court is **GRANTED-IN-PART** and **DENIED-IN-PART**. The motion is **granted** to the extent that the Court will enter summary judgment in favor of Claimants and against Petitioners on Count I and Count II because Petitioners did not timely file this action. The motion is **denied** to the extent that the Court denies Petitioners' request for the Court to lift the stay and injunction.

5. The Clerk is directed to enter **JUDGMENT** in favor of Claimants Nicholas Cachussie, Adrienne Cachussie, and Cheryl Watkins and against Petitioners Intrepid Marine Towing & Salvage, Inc. d/b/a Sea Tow Clearwater/Port Richey, and its stockholder/s, including James Patrick Lamb, as owners and/or owners *pro hac vice* of a 1998 World Cat 266SS, Vessel Identification Number (VIN) EPY662178898, FL Registration Number FL3588KF, including her engines, gear, tackle, appurtenances, equipment, furniture, etc. on Count I (Exoneration) and Count II (Limitation of Liability in the Alternative).

6. The Clerk is directed to terminate all pending deadlines and to **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida on December 8, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

22